LAW LIBRARY

**NOT FOR PUBLICATION IN WEST'S HAWAI‘I REPORTS AND PACIFIC REPORTER**

NO. 29216

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI‘I

STATE OF HAWAI‘I, Plaintiff-Appellee, v.
CHARLES KANANI PAULINO, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CR. NO. 05-1-0065K)

MEMORANDUM OPINION
(By:  Foley, Presiding J., Fujise and Leonard, JJ.)

Defendant-Appellant Charles Kanani Paulino (Paulino) appeals from the Judgment filed on December 22, 2006 in the Circuit Court of the Third Circuit[1] (circuit court).  A jury found Paulino guilty of

> Count XI, Robbery in the First Degree, in violation of Hawaii Revised Statutes (HRS) § 708-840(1)(b) (1993 & Supp. 2005);
>
> Count XIII, Criminal Property Damage in the Fourth Degree, in violation of HRS § 708-832(1) (1993);
>
> Count XIV, Carrying or Use of Firearm in the Commission of a Separate Felony, in violation of HRS § 134-6(a) & (e) (Supp. 2005), (the separate felony was Theft in the First Degree, a violation of HRS §§ 708-830(1) (1993 & Supp. 2005) and 708-830.5 (1993));
>
> Count XVI, Ownership Prohibited, in violation of HRS § 134-7(b) & (h) (Supp. 2005);
>
> Count XVII, Ownership Prohibited, in violation of HRS § 134-8 (1993);
>
> Count XVIII, Place to Keep Firearms, in violation of HRS § 134-6(c) & (e) (Supp. 2005);
>
> Count XIX, Permits to Acquire, in violation of HRS §§ 134-2(a) (Supp. 2005) and 134-17 (Supp. 2008); and
>
> Count XXI, Prohibited Acts Related to Drug Paraphernalia, in violation of HRS § 329-43.5 (1993).

---

[1]  The Honorable Elizabeth A. Strance presided.

On appeal, Paulino raises five points of error:

(1)  there was insufficient evidence to support his conviction for Robbery in the First Degree (Count XI) because the use of force did not occur in the course of the robbery;

(2)  the August 4, 2006 Trial Stipulations [sic] (Trial Stipulation) and September 15, 2006 Amended Trial Stipulation (Amended Stipulation) (collectively, the Stipulations) and the circuit court's oral colloquies thereon were defective because in neither was he informed of his constitutional right to confrontation and to compel the State to prove each element of the offenses charged;

(3)  the sentencing enhancement, pursuant to HRS § 706-660.1(3)(b) (1993), violated his due process rights because the State of Hawai'i (State) failed to provide adequate notice of its intention to seek enhanced sentences;

(4)  Count XIV, Carrying or Use of Firearm in the Commission of a Separate Felony (the felony being Attempted Theft in the First Degree), should have been dismissed when the circuit court dismissed the underlying separate felony of Count XII (Theft in the First Degree); and

(5)  the circuit court should have instructed the jury to consider whether Count XIV and Count XI (Robbery in the First Degree) merged, whether the firearm possession offenses in Counts XIV, XVI, and XVIII merged, and whether the ammunition possession offenses in Counts XVII and XVIII merged.

Because we dispose of this appeal based on Paulino's points of error 1 and 2, we need not address his points 3 through 5.

## I.  BACKGROUND

On March 14, 2005, a grand jury issued an indictment containing 22 counts against Paulino:

> Count I, Attempted Murder in the First Degree, HRS §§ 705-500(1)(b) (1993) and 707-701(1)(a) (1993 & Supp. 2005), for firing a semiautomatic firearm in the direction of two or more persons;

2

Count II, Attempted Murder in the Second Degree, HRS §§ 705-500(1)(b) and 707-701.5 (1993), for firing a semiautomatic firearm in the direction of Solomon Alani (Alani);

Count III, Attempted Murder in the Second Degree, HRS §§ 705-500(1)(b) and 707-701.5, for firing a semiautomatic firearm in the direction of Edwin Hao, Jr. (Hao);

Count IV, Attempted Murder in the Second Degree, HRS §§ 705-500(1)(b) and 707-701.5, for firing a semiautomatic firearm in the direction of Sosimo Tabieros, Jr. (Tabieros);

Count V, Terroristic Threatening in the First Degree, HRS §§ 707-715(1) (1993) and 707-716(1)(d) (1993), for threatening bodily injury to Hao with a dangerous instrument, a semiautomatic handgun;

Count VI, Terroristic Threatening in the First Degree, HRS §§ 707-715(1) and 707-716(1)(d), for threatening bodily injury to Alani with a dangerous instrument, a semiautomatic handgun;

Count VII, Terroristic Threatening in the First Degree, HRS §§ 707-715(1) and 707-716(1)(d), for threatening bodily injury to Tabieros with a dangerous instrument, a semiautomatic handgun;

Count VIII, Reckless Endangering in the First Degree, HRS § 707-713(1) (1993), for firing a semiautomatic firearm in a manner that recklessly placed Hao in danger of death or serous bodily injury;

Count IX, Reckless Endangering in the First Degree, HRS § 707-713(1), for firing a semiautomatic firearm in a manner that recklessly placed Alani in danger of death or serous bodily injury;

Count X, Reckless Endangering in the First Degree, HRS § 707-713(1), for firing a semiautomatic firearm in a manner that recklessly placed Tabieros in danger of death or serous bodily injury;

Count XI, Robbery in the First Degree, HRS § 708-840(1)(b), for using force against Tabieros and/or Alani and/or Hao in the course of committing theft while armed with a dangerous instrument, a semiautomatic firearm;

Count XII, Theft in the First Degree, HRS §§ 708-830(1) (1993 & Supp. 2005), 708-830.5(1)(a) (1993), and 705-500, for obtaining unauthorized control over the State's property, the value of which exceeded $20,000[2];

Count XIII, Criminal Property Damage in the Fourth Degree, HRS § 708-823(1), for damaging the State's property;

Count XIV, Carrying or Use of Firearm in the Commission of a Separate Felony, HRS § 134-6(a) & (e), (the separate felony was Theft in the First Degree, a violation of HRS §§ 708-830(1) and 708-830.5);

Count XV, Carrying or Use of Firearm in the Commission of a Separate Felony, HRS § 134-6(a) & (e) (the separate felony was Attempted Murder in the First Degree, a violation of HRS §§ 705-500 and 707-701);

Count XVI, Ownership or Possession Prohibited, HRS § 134-7(b) & (h), for owning, possessing, or controlling a semiautomatic handgun or ammunition and having a prior conviction for a crime of violence;

Count XVII, Ownership Prohibited, HRS § 134-8, for possessing an ammunition magazine with a capacity in excess of ten rounds that was inserted into a pistol;

Count XVIII, Place to Keep Firearms, HRS § 134-6(c) & (e), for possessing a semiautomatic handgun or ammunition, not properly confined;

Count XIX, Permits to Acquire, HRS §§ 134-2(a) and 134.17, for having no permit for a semiautomatic handgun;

Count XX, Promoting a Dangerous Drug in the Third Degree, HRS § 712-1243(1) (Supp. 2008), for possessing methamphetamine[3];

Count XXI, Unlawful Possession of Drug Paraphernalia, HRS § 329-43.5;

---

[2] The circuit court dismissed this count on April 19, 2006 for insufficient evidence.

[3] On September 22, 2006, the circuit court granted Paulino's motion for judgment of acquittal as to this count, finding that there was de minimis evidence of methamphetamine.

<u>Count XXII</u>, Attempted Murder in the First Degree, HRS §§ 705-500(1)(b) and 707-701(1)(b) (1993 & Supp. 2005), against police officers Sean Smith and/or William Brown, by reaching for a loaded semiautomatic gun when confronted by the two officers.

The events giving rise to the indictment took place on February 16, 2005. That morning, Alani, Tabieros, and Hao (collectively, Employees), who were employed by the State's Highways Division, arrived at a gated work site. When they opened the gate, Paulino leapt from a backhoe that was stored at the work site. Paulino stopped and stared at Employees and then ran away from them. Employees yelled at Paulino to stop, and Hao ran after Paulino. Shots were fired in the direction of Employees. Hao laid down in the grass, and Alani and Tabeiros jumped in their truck. The bullets hit near Employees. Employees reported the incident to management and the police.

After the police arrived, the police and Employees noted signs of bullet impact at the site and damage to the backhoe consistent with an attempt to hot-wire it. Officers recovered spent casings and an empty 15-round Glock magazine on the trail Paulino ran down.

That night, police apprehended Paulino on Route 190, a public highway. Officers found a Glock handgun in Paulino's waistband and bullets and a glass pipe in his pockets. The police also removed Paulino's backpack and found within it various hardware tools and identifiable items from the backhoe.

On March 14, 2005, a grand jury issued the twenty-two-count indictment against Paulino arising out of the events on February 16, 2005. Before trial, Paulino and the State presented the circuit court with the Trial Stipulation. The circuit court was subsequently presented with the Amended Stipulation. The circuit court found that Paulino had knowingly, voluntarily, and intelligently consented to the Amended Stipulation, and the court received the stipulation and stated that it would be read to the jury. In the Amended Stipulation, Paulino conceded that the

State's evidence provided conclusive proof of some elements of the crimes charged and stipulated that he committed the crimes charged in the following counts: Counts V, VI, VII, VIII, IX, X, XIII, XVI, XVII, XVIII, XIX, and XXI. The Amended Stipulation did not indicate that Paulino, by signing it, was waiving his right to compel the State to prove each element of the crimes charged. The circuit court in conducting oral colloquies on the two Stipulations also failed to inform Paulino that he was waiving this constitutional right.

On September 28, 2006, the jury found Paulino not guilty of Counts I, II, III, IV, XV, and XXII and guilty of Counts XI, XIII, XIV, XVI, XVII, XVIII, XIX, and XXI. The jury further found that Counts V, VI, VII, VIII, IX, X merged with Count XI.

On December 22, 2006, the circuit court entered the Judgment. Paulino filed a notice of appeal on June 25, 2008.[4]

## II. STANDARDS OF REVIEW

### A. Sufficiency of the Evidence

The appellate court reviews the sufficiency of evidence on appeal as follows:

> [E]vidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact.

State v. Richie, 88 Hawai'i 19, 33, 960 P.2d 1227, 1241 (1998) (quoting State v. Quitog, 85 Hawai'i 128, 145, 938 P.2d 559, 576

---

[4] Paulino did not file his notice of appeal within 30 days after entry of the Judgment, as required by Hawai'i Rules of Appellate Procedure (HRAP) Rule 4(b)(1). Nevertheless, in "criminal cases, [the Hawai'i Supreme Court] ha[s] made exceptions to the requirement that notices of appeal be timely filed," and the exceptions include "circumstances where . . . defense counsel has inexcusably or ineffectively failed to pursue a defendant's appeal from a criminal conviction in the first instance." State v. Irvine, 88 Hawai'i 404, 407, 967 P.2d 236, 239 (1998). Paulino's failure to assert a timely appeal appears to be the result of ineffective assistance of his counsel and, thus, does not preclude him from asserting an appeal.

(1997)). "'Substantial evidence' as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." Richie, 88 Hawaiʻi at 33, 960 P.2d at 1241 (internal quotation marks and citation omitted).

### B. Constitutional Questions

The appellate court reviews questions of constitutional law *de novo* under the "right/wrong" standard and, thus, exercises its "own independent judgment based on the facts of the case." State v. Jenkins, 93 Hawaiʻi 87, 100, 997 P.2d 13, 26 (2000) (internal quotation marks and citation omitted).

### C. Plain Error/Rule 52(b)

Hawaiʻi Rules of Penal Procedure Rule 52(b) states that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Therefore, an appellate court "may recognize plain error when the error committed affects substantial rights of the defendant." State v. Staley, 91 Hawaiʻi 275, 282, 982 P.2d 904, 911 (1999) (internal quotation marks and citation omitted).

The appellate court "will apply the plain error standard of review to correct errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights." State v. Nichols, 111 Hawaiʻi 327, 334, 141 P.3d 974, 981 (2006) (quoting State v. Sawyer, 88 Hawaiʻi 325, 330, 966 P.2d 637, 642 (1998)). An appellate court's "power to deal with plain error is one to be exercised sparingly and with caution because the plain error rule represents a departure from a presupposition of the adversary system--that a party must look to his or her counsel for protection and bear the cost of counsel's mistakes." Nichols, 111 Hawaiʻi at 335, 141 P.3d at 982 (quoting State v. Kelekolio, 74 Haw. 479, 515, 849 P.2d 58, 74-75 (1993)).

D.    Harmless Error

Hawai'i Rules of Penal Procedure (HRPP) Rule 52(a) provides, in relevant part, that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."  The Hawai'i Supreme Court has stated that "[s]uch error, however, should not be viewed in isolation and considered purely in the abstract.  It must be examined in light of the entire proceedings and given the effect to which the whole record shows it is entitled." State v. Sprattling, 99 Hawai'i 312, 320, 55 P.3d 276, 284 (2002) (internal quotation marks, citation, and brackets in original omitted).  Under the harmless error standard, the appellate court "must determine whether there is a reasonable possibility that the error complained of might have contributed to the conviction." State v. Pauline, 100 Hawai'i 356, 378, 60 P.3d 306, 328 (2002) (internal quotation marks and citation omitted).  "If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside." State v. Gano, 92 Hawai'i 161, 176, 988 P.2d 1153, 1168 (1999) (internal quotation marks and citation omitted).

"A constitutional error is harmless as long as the court is able to declare a belief that it was harmless beyond a reasonable doubt." Korean Buddhist Dae Won Sa Temple of Hawaii v. Sullivan, 87 Hawai'i 217, 245, 953 P.2d 1315, 1343 (1998) (internal quotation marks, citation, brackets, and ellipsis omitted).

### III.  DISCUSSION

A.    **There was substantial evidence to support Paulino's conviction for Robbery in the First Degree because Paulino did use force in the course of committing a theft.**

Paulino argues that "[t]here was insufficient evidence to support any conviction for robbery as a matter of law, because

[he] did not employ force 'in the course of committing a theft.'" HRS § 708-840 provides in relevant part:

> **§708-840 Robbery in the first degree.** (1) A person commits the offense of robbery in the first degree if, <u>in the course of committing theft</u>:
>
> . . . .
>
> (b) The person is armed with a dangerous instrument and:
>
> (i) The person uses force against the person of anyone present with intent to overcome that person's physical resistance or physical power of resistance; or
>
> (ii) The person threatens the imminent use of force against the person of anyone who is present with intent to compel acquiescence to the taking of or escaping with the property.

(Emphasis added.) HRS § 708-842 (1993) defines "in the course of committing a theft" as occurring "in an attempt to commit theft, in the commission of theft, or in the flight after the attempt or commission."

Paulino's use of force clearly occurred "in the course of committing theft." The plain language of HRS § 708-842 extends "in the course of" to "flight after the attempt." <u>See State v. Wells</u>, 78 Hawai'i 373, 376, 894 P.2d 70, 73 (1995) (internal quotation marks and citation omitted) ("And where the language of the statute is plain and unambiguous, [a court's] only duty is to give effect to [the statute's] plain and obvious meaning."). Substantial evidence supports the inference that Paulino was attempting to hot-wire the backhoe, and the arrival of Alani, Hao, and Tabieros foiled Paulino's efforts. Paulino ran, and as Hao chased Paulino, shots were fired. This use of force occured during "flight after the attempt" and therefore occured "in the course of" the theft.

Paulino's reliance on <u>State v. Arlt</u>, 9 Haw. App. 263, 833 P.2d 902 (1992), does not compel a different conclusion. In <u>Arlt</u>, this court determined that Arlt had completed the theft of a tequila bottle from a store after snatching it and leaving the

9

premises. Id. at 272, 833 P.2d at 907. Accordingly, we held that Arlt's later use of force against the store owner when returning the bottle did not occur "in the course of" the theft. Id. at 272-74, 833 P.2d at 907-08. Arlt is inapposite because Arlt's use of force occurred in his voluntary attempt to return the stolen bottle to the store owner after Arlt completed the theft. In the instant case, Paulino's use of force occurred during flight from a theft attempt. The two are factually distinguishable.

This court accordingly concludes that there is substantial evidence establishing that Paulino's use of force occurred "in the course of committing theft."

### B. The failure to inform Paulino of his right to compel the State to prove each element of the offense charged rendered the Amended Stipulation and colloquies constitutionally defective.

The State argues that Paulino did not challenge the constitutionality of the Amended Stipulation or the oral colloquies at trial and therefore waived this point of error on appeal. "Normally, an issue not preserved at trial is deemed to be waived. But where plain errors were committed and substantial rights were affected thereby, the errors may be noticed although they were not brought to the attention of the trial court." State v. Fagaragan, 115 Hawai'i 364, 367-68, 167 P.3d 739, 742-43 (2007) (internal quotation marks, citations, and brackets omitted). We accordingly review Paulino's point of error to determine if Paulino's "substantial rights were affected thereby." Id. at 368, 167 P.3d at 743.

Paulino argues that neither the Amended Stipulation nor the oral colloquies on the Trial Stipulation and Amended Stipulation contained the necessary advisement or waiver and, as a matter of law, were constitutionally defective. On August 4, 2006, the circuit court received and approved the Trial Stipulation entered into by the State and Paulino. On

10

September 15, 2006, the circuit court received the Amended Stipulation. In the Amended Stipulation, Paulino conceded the State's evidence, as conclusively proven, on the monetary value of the backhoe, the type and functionality of the gun and ammunition in his possession, identifiable backhoe items recovered from his person, and the results of DNA tests conducted on clothing discovered on the backhoe. Paulino also conceded that he committed numerous counts charged in the indictment. The Amended Stipulation provided in part:

> 11. The jury shall consider conclusively proven that the gun recovered from [Paulino] by [Officer Smith] was a semi-automatic handgun, a pistol and a firearm, and that said handgun, pistol, and firearm was fully operable, for any count requiring proof of that fact.
>
> 12. The jury shall consider conclusively proven that the magazine attached to the gun recovered from [Paulino] by [Officer Smith] was a detachable ammunition magazine with a capacity in excess of ten rounds which is designed for or capable of use with a pistol, and which was possessed while inserted into a pistol.
>
> . . . .
>
> 27. [Paulino] and the [State] stipulate that [Paulino] is the person who was found on the State highway backhoe when [Alani, Hao, and Tabieros] arrived at work on 2/16/05. [Paulino] further stipulates that he is the person who fired a Glock semi-automatic pistol firearm that morning.
>
> . . . .
>
> 29. [Paulino] stipulates that prior to 2/16/05, he was convicted of a separate crime of violence, Assault in the Third Degree, a misdemeanor. A copy of the conviction is submitted as State's Exhibit 27.
>
> 30. Each of the exhibits above-mentioned, will be admissible without the necessity of showing chain of custody. [Paulino] stipulated that a chain of custody was maintained, as shown on the Property and Evidence Receipt for each item.
>
> 31. [Paulino] stipulates and you shall find conclusively (subject to the jury instructions on Merger), that [Paulino] committed the following offenses:
>
> **Counts V, VI, and VII:** Terroristic Threatening in the First Degree
>
> **Counts VIII, IX, and X:** Reckless Endangering in the First Degree
>
> **Count XIII:** Criminal Property Damage in the Fourth Degree

Count XVI: Ownership or possession prohibited, [Paulino] having been convicted before February 16, 2005 of having committed a crime of violence, and being in possession or control of a Glock semi-automatic handgun or ammunition therefore.

Count XVII: Ownership Prohibited of a detachable ammunition magazine with a capacity in excess of ten rounds.

Count XVIII: Place to Keep Firearms

Count XIX: Permit to Acquire

Count XXI: Prohibited Acts Related to Drug Paraphernalia

On August 4, 2006, the circuit court conducted an oral colloquy as to the Trial Stipulation. The colloquy involved the circuit court reciting the evidence set forth and the conclusions contained in each paragraph of the Trial Stipulation and eliciting an affirmative response from Paulino as to each paragraph. The circuit court did not advise Paulino that he was waiving his constitutional right to confront witnesses and to have the State prove each element of the crimes charged beyond a reasonable doubt. Yet, the circuit court found that Paulino had knowingly, voluntarily, and intelligently entered into the Trial Stipulation.

On September 15, 2006, the circuit court engaged Paulino in an oral colloquy as to the Amended Stipulation. The circuit court questioned Paulino concerning only the paragraphs that were different from those in the Trial Stipulation. The circuit court recited the changed evidence and conclusions and elicited an affirmative response from Paulino as to each paragraph. The circuit court again failed to advise Paulino that he was waiving his constitutional right to confront witnesses and have the State prove each element of the offenses charged beyond a reasonable doubt and again found Paulino's waiver knowing, voluntary, and intelligent.

It is settled precedent in Hawai'i that a knowing and voluntary waiver of fundamental rights must come directly from the defendant. See State v. Murray, 116 Hawai'i 3, 10-13, 169

P.3d 955, 962-65 (2007) (court's failure to engage defendant in oral colloquy on his constitutional right to have the State prove each element of the offense charged beyond a reasonable doubt invalidated written stipulation); see also State v. Ibuos, 75 Haw. 118, 121, 857 P.2d 576, 578 (1993) ("A knowing and voluntary waiver of the right to trial by jury must come directly from a defendant, either in writing or orally."); State v. Tachibana, 79 Hawai'i 226, 235-36, 900 P.2d 1293, 1302-03 (1995) (concluding that the trial court must engage in an on-the-record colloquy to ensure that the defendant knowingly and voluntarily waived his constitutional right to testify).

The Amended Stipulation implicated Paulino's fundamental right to have the State prove each element of the offense charged.  See Murray, 116 Hawai'i at 10, 169 P.3d at 962 (footnote omitted) ("The defendant's right to have each element of an offense proven beyond a reasonable doubt is a constitutionally and statutorily protected right."); see also U.S. Const. amend. XIV; Haw. Const. art. 1, § 5; HRS § 701-114 (1993).  Paulino's stipulation that he committed the offenses set forth in Counts V, VI, VII, VIII, IX, X, XIII, XVI, XVII, XVIII, XIX, and XXI was to relieve the State of its burden of proving these charges beyond a reasonable doubt and was tantamount to a guilty plea on these counts.  In addition, the Amended Stipulation was to relieve the State of its burden of proving the "dangerous weapon" element of Count XI and the "firearm" and "separate felony" elements of Count XIV.

We agree with Paulino that neither the Amended Stipulation nor the two oral colloquies at trial sufficiently apprised Paulino of his fundamental right to have the State prove each element of the offenses charged, thus ensuring a voluntary and intelligent waiver in compliance with Murray.  The Amended Stipulation made no mention of Paulino's fundamental right to have the State prove each element of the offenses charged, and the oral colloquies at trial merely recited the written

Stipulations. Paulino consequently never made a voluntary, intelligent waiver of this fundamental right.

Because the circuit court's error impacts a substantial right, we find plain error. See Staley, 91 Hawai'i at 282, 982 P.2d at 911 (noting that the appellate court may exercise plain error review where the error impacts a defendant's substantial rights). Under Murray, 116 Hawai'i at 10-13, 169 P.3d at 962-65, we must vacate all counts directly impacted by the defective Stipulations. We conclude that absent the Amended Stipulation, the evidence was not overwhelming and it is reasonably possible that the error in accepting the Amended Stipulation contributed to the convictions.

## IV. CONCLUSION

This court vacates the Judgment filed in the Circuit Court of the Third Circuit on December 22, 2006 and remands this case for a new trial.

DATED: Honolulu, Hawai'i, January 25, 2010.

On the briefs:

Karen T. Nakasone,
Deputy Public Defender,
for Defendant-Appellant.

Linda L. Walton,
Deputy Prosecuting Attorney,
County of Hawai'i,
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge